Good morning. It's my pleasure to be the first to welcome the panel to beautiful Honolulu. Thank you. We're very pleased to be here. I'm sure you'll have a nice stay here. I represent the Rundgrens. My name is Gary Dubin. And as the Court knows, this is another FURIA case. My purpose here is to basically answer any questions you may have regarding this case. But let me point out that this case began in defense of a non-judicial foreclosure. My clients were faced with an auction taking place. And on the same day, we filed this action in the state court in order to stop the sale. And we were successful in stopping the sale. However, the United States District Court very rapidly dismissed the case, claiming that my clients did not have, or the court did not have jurisdiction because of the FURIA law. And we had seven claims, fraud, rescission, unfair and deceitful business practices, injunction, RESPA, breach of fiduciary duty, and punitive damages. And my argument today is that at least five of those claims, the court did have jurisdiction. And why? Because they were affirmative defenses or because you had no ability to exhaust? There's four reasons. Give me your best two. I've identified. Okay. They're all equally good reasons. The first one is, obviously, their defense is the foreclosure. But I have to be honest with the court, that's only the beginning of the analysis. Well, but before you go further, because this interests me, this is a non-judicial foreclosure, correct? The underlying foreclosure was a non-judicial foreclosure. It didn't require the bank to go to court to foreclose on the deed of trust. Is there an affirmative defense to a non-judicial action? Normally, we think of affirmative defenses to lawsuits. It seems to me you have claims here that might prevent them from foreclosing. But why are these affirmative defenses? Well, they're affirmative defenses because, at least in Hawaii, after the non-judicial foreclosure, the borrower, the homeowner, is still in possession. And in order to take the borrower out of possession, the lender or the high bidder has to go into court for an injectment action. Thank you for anticipating my question. Why then were you entitled to enjoin the foreclosure as opposed to simply raising these as defenses in the injectment action? Well, the Hawaii Supreme Court has many times held that if you don't first try to stop the non-judicial foreclosure, you've waived your defenses. We have two recording systems here, one land court and one regular system. And especially in the land court system, if you don't try to stop the non-judicial foreclosure, then you don't have any more defenses. So it's very important to try to get in front of the non-judicial foreclosure. But in trying to do what the Supreme Court has told you you need to do to preserve your defenses, your client was initiating the action, correct? Correct. So that's what makes it difficult to say when you're initiating the action and you're raising a claim and the claim relates to an act or omission of WAMU, why that doesn't fall within the 1821d, 13d, little 2i, regardless of what might have happened had there been later an injectment action where you are raising a defense. Well, I think that this court in the Benson case answered that, that it's not so much whether you label something a counterclaim or a claim or an affirmative defense. The question is whether it falls within the statute. But the Benson seemed to be looking at little i instead of little 2i and was analyzing doing a very close reading of the statutory language of little i, but never really got to the little 2i, which seems to specifically cover the sort of claim you're bringing here, a claim relating to any act or omission of such institution, which in this case is the failed bank. Why isn't that, just by the plain language, why isn't that applicable? This, I think, is the key question for this entire segment. We can't get lost in this issue as whether it's a claim or whether it's a counterclaim. There are three reasons why this kind of claim would not be applicable. Because, for example, the FREA forms are damage forms. They merely ask you how much money have you, say, you've lost, what your damage is. FREA does not really take into account these kind of equitable defenses that my client was raising. And I recently found a very good decision which explained that. And may I give the court the citation? J.P. Morgan Chase Bank National Association v. McFadden, M-C-P-H-A-D-E-N. 210 Westlaw 4071653. That, in effect, the form for FREA does not encompass these kinds of issues. The second of the two reasons is that... Before you go on, let me ask a question about that. Because I'm interested in what relief you're seeking in this case. Let me just sort of set out the background, because I understand it. Your client or your client's predecessor borrowed money from J.P. Morgan or from WAMU. Correct. Used it for a mortgage or a deed of trust to finance a residential property? To refinance. Refinance a residential property. And you seek rescission in this case. Is it your position that you want to undo the deal by giving back the money and keeping the property? I'm having difficulty figuring out what relief you're seeking that really, in the end... Let me finish here. Really, in the end, the only relief you can really be seeking is damages, isn't it? I don't think so, Your Honor. Do you think you're entitled to keep the money and the property, too? No. No, that would be up to the court. But we have seven claims. I have to concede that the second claim for rescission, based upon truth in lending, is the court has already acknowledged that that falls outside of FREA. And the sixth claim, breach of fiduciary duty, that's a pure damage claim. And I would agree that the lower court would not have jurisdiction. But the other claims ask for different kinds of relief. And I know what the claims are. My question is, is any of that relief possible? In other words, can you really borrow the money, not give it back, keep the money and keep the property that was refinanced within any sense of equitable relief? And aren't these all really claims for damages in some way or another? I think you're getting ahead of the jurisdictional issue. That's something the court would have to decide. But you're asking us to decide whether or not you've got damages claims, which would clearly fall, in your view, within FREA, or other claims. And what I'm having some difficulty with is looking at the facts of this case and figuring out how you could possibly get equitable relief that didn't involve, in the end, damages. Well, the law in Hawaii allows for voiding an agreement which is unfair and deceptive. That's Section 480-12. And in the KEDA case in the Hawaii Supreme Court years ago, voided the entire mortgage in that case because there was an unlicensed lender. And did the borrower get to keep the loan? Did the borrower keep the loan in that case? Yes. The borrower kept the loan free and clear of the mortgage. But, again, we face here the jurisdictional issue. Could you also address, the district court also decided or dismissed on 12b-6 grounds and said you sued the wrong party because the purchase and exception agreement retained all of the liability in the FDIC. Absolutely not. And that's my other argument, that there are claims against Chase independent of claims against WAMHA. Are they in your complaint? Yes, they are. Identify where in your complaint there are claims against Chase independent of your claims against WAMHA. Beyond the Taylor claim. Beyond the, yeah, the Truth in Lending Act claim, which you concede is not a viable claim. Thank you. We claim throughout the lower court case that Chase never owned the mortgage. The pooling and servicing agreement does not specify what mortgages WAMHA owned at the time of the rescission. Now, we know a lot more now about that issue than we knew then. Yeah, but I'm asking, and I hope the panel is interested in, where is that in your complaint? I know from reading your briefs you think you know more now than you did then. But the judge was dealing with the complaint and issued a 12B6 order. Where in your complaint do you say, other than the Truth in Lending Act claim, that J.P. Morgan did something wrong independently of assuming any liabilities of WAMHA? I didn't see it. It's not a trick question. I didn't see it, but perhaps I overlooked it. Your Honor, I suppose we could have made it clearer had we had an opportunity to amend the complaint. But we did not have that opportunity. But if you look through the counts, you'll see we're talking about, well, for example, count one. We're talking about the fact that the power of sale clause was unconstitutional. That was a power of sale clause obtained by WAMHA, correct? Well, no, it was being enforced by Chase. Okay. And I can go through. I'm not sure I have enough time. I wanted to reserve it. That's okay. I can go back and look at your complaint myself. I thought maybe you could easily identify for me. But, again, in these cases, the administrative remedy is not suited for these kinds of issues, like in Benson, mutual mistake of fact. And whether or not my clients have an adequate remedy and whether they can fulfill their unfair and deceptive rescission obligations doesn't go to the issue of jurisdiction. I'd like to reserve the two minutes if I could. Yes. Why don't we hear from the other side, and you have safety and time. Thank you so much. Good morning. May it please the Court. My name is Paul Alston. I represent J.P. Morgan Chase. I'd like to begin by addressing Chetrowet's question, which is whether there is anything in the complaint that arises independently of the acts of WAMHA based on the post-purchase conduct of J.P. Morgan Chase. And the answer is no, there is nothing there. Well, the TILA claim, right? You're saying other than the Truth in Limbing Act claim? Yes, of course, Your Honor. I apologize. Other than that one claim which Judge Seabright allowed to stand and which was later dismissed by agreement. And Mr. Dubin says this morning that he was not afforded the opportunity to amend. In fact, in the conclusion of Judge Seabright's decision, he writes that plaintiffs are granted leave to file a first amended complaint by December 13, 2010, and for the limited purpose of alleging any claims, if possible, based on conduct by Chase after September 25, 2008. They did not seek to amend. He had the opportunity. If anything in his arguments or claims arose out of post-acquisition conduct by Chase, he could have amended to assert them, but he didn't. Because, in fact, other than perhaps this theory that the foreclosure under a power of sale is unconstitutional, there was nothing that arose independently of the acts of WAMU. And then going to Judge Ikuda's question, if you look at the claims in the complaint, every single one of them is for damages, either actual damages or treble damages. There is not a claim in the complaint. Even the claim that supposedly is for injunctive relief alone asks for actual damages. Does that make a difference? Well, I understand that the damages claims are not viable under FREA, but if you combine a damages claim with an injunctive relief claim, aren't we required to look at both parts of it? Yes. I think you strip out the Midwest federal case decided by this Court and the Benson case suggests that you strip out the parts of a claim to determine whether there is any residue that would be permissible under FREA. But even when you do that here, you have to do two things. I mean, one, the Midwest federal case teaches that you have to look for actions which are, which provided a, quote, independent basis for a claim that is apart from what was done or not done by the failed institution. And the Benson case says that you have to look at the purchasing bank's post-purchase activities and see if what's pleaded is based just on those activities. Here, Judge Seabright found the complaint was wanting. The plaintiffs did not amend, and they did not defend against Judge Seabright's ruling the complaint as it stood at the time of the dismissal. That is, in their opening brief, in their reply brief, nowhere have they said that they have, in fact, pleaded claims that arise just based on post-September 2008 activities. That goes to the 12B6 motion, I think. It does. Can we go back to the jurisdictional issue? Sure. Why, if this were a mortgage foreclosure as opposed to a nonjudicial foreclosure, and your client went into court to foreclose a mortgage, and they raised as affirmative defenses fraud and whatever else they raised, would those be viable defenses under the Act? If they were to argue that there was a basis under Hawaii state law to prevent the foreclosure. And that's what they're arguing. That would serve as a defense. So why is it different? I'm sorry, I didn't understand your answer. Your answer would be yes, that that could be raised in a judicial foreclosure. As an affirmative defense? I think it would ultimately fail, but I think it could be raised. Sure. Put aside demerits. So we have the Balduck case from the First Circuit, which seems to say because it's a nonjudicial foreclosure, you've got to run into court to stop it as opposed to waiting for the lender to chase you. Why doesn't that apply here? Well, I think two things. First, even if you accept the procedural complaints about what Judge Seabright decided, there is the second and independent basis for dismissal, which is not disputed, and that is that this complaint simply doesn't. And let's assume I agree with you on that. Then you don't need to. Well, don't we need to figure out whether we have jurisdiction before we rule on demerits? I'll answer that. The Supreme Court has said yes, we can assume jurisdiction. I wasn't asking Judge Ikudo. I thought I knew the answer when I asked. Well, yes, but when, in fact, the complaint fails, then deciding the jurisdictional issues, as interesting as they may be, really amounts to an advisory determination because you're sort of stepping into that jurisdictional thicket where Mr. Dubin supports, tries to extend the Balduck case from that First Circuit to this circuit and tries to extend not just purely defensive arguments but arguments that want affirmative relief based on pre-acquisition conduct. But bear with me for a second. Let's assume that Judge Ikudo and I think we have to decide the jurisdiction. I don't want to speak for Judge Fletcher, that we have to address the jurisdictional issue as a prerequisite to getting to the 12b-6 if we have jurisdiction. Why did the district court lack jurisdiction here? Basically because if you parse through virtually every aspect of the claims as presented, they do not rise independently of the acts and omissions of the failed institution. What the Midwest Federal case in 36F3rd says and what Benson say is basically the same thing. You have to be basing either the claim or the affirmative defense on some post-acquisition conduct of the new institution. That's not what underlies this case. How could the objections or all of the objections now raised to the behavior of WAMU have been raised before in front of the FDIC? I have trouble seeing what that complaint in front of the FDIC would have looked like. The complaint to the FDIC would have been that the Rundgrens were defrauded with respect to the decision they made to refinance, that they were cheated into a loan that didn't in fact represent the agreement they struck with WAMU, and further that they were duped into allowing a junior mortgage on usurious terms, which are described in the complaint. But at least they had to present the claims of fraud and misrepresentation to the FDIC under a five-year process. How is that going to work? I'm not sure this matches the timing in this particular case, so to some degree this may be an abstract question. How do these work in the absence of default by the borrower? Can the borrower come in and say, I'm fully current on my loan, but I've got various problems about the origination of the loan. Would the FDIC hear that? Frankly, Judge Fletcher, I do not know. I cannot say what the FDIC will or will not. Because what I'm seeing here is a possibility that there are in fact viable claims against the original lender that once the J.P. Morgan Chase or somebody else steps in and picks up all of the loans of the failed lender, that in fact, in realistic terms, might not be something you could bring in front of the FDIC, and then you take it free and clear, and so the borrower is left out in the cold. No, the borrower is not left out in the cold. The borrower is left in a position where they can go to the FDIC. The FDIC, there's nothing in this way. Well, there's a fairly short statute of limitations for bringing something in front of the FDIC. And there is a safety valve for people who are not given notice of the opportunity to present claims. But on this record, there is no evidence that the Rundgrens didn't know. There is no evidence that the Rundgrens tried and failed. And there is simply no basis to speculate that if they had gone to the FDIC, they would have had the door slammed in their face and received no remedy. So is it your position that if it's unclear whether the FDIC can give an appropriate remedy, you nonetheless must exhaust and establish that they couldn't before you bring a lawsuit? Correct. I think they have to at least try. If they try and fail, either procedurally on the merits, then the opportunity may be open to come and complain in this court. But until they've tried that process, I suggest it's not for the federal courts to say, well, we know the FDIC won't hear you. We know the FDIC won't give you any relief, regardless of the nature of the allegations that are made about the conduct of the underlying bank, the failed institution. And so I would suggest that it would be inappropriate to, on a record like they've presented here, where there is simply no evidence that they lack an opportunity to get relief in front of the FDIC, to assume that they can't and therefore say that the court is going to accept jurisdiction, not merely to review the post-acquisition conduct of the acquiring institution, but to look at and perhaps grant relief based on the pre-acquisition conduct. And in that regard, if I could just one second. Please, I'm sorry. And that is, if you look at the terms of the purchase and assumption agreement, which was the second basis on which Judge Seabright justified the dismissal, what you find is that claims, whether presented affirmatively or defensively, were left with the FDIC as the receiver of the failed institution. And that's the form in which they have to go seek relief. I was going to ask, I suppose this gets back to a point you made before. Each count, as I see it, seeks damages in addition to various injunctive or equitable relief. And if you have to pursue the damages claim in front of the FDIC, then I suppose you would have a resolution of the underlying merits of those claims without regard to whether the FDIC could grant the appropriate relief, wouldn't you? Potentially. Yeah. I mean, the FDIC might say, you know. These are great claims, but we can't rescind the mortgage. Right. Or rescind the deed of trust, in which case you'd have to go to court to do it. Right. I had a separate question was, isn't Balduck on point? And whether or not it's persuasive, isn't it on point? It is. So we would have to go in a different direction in the First Circuit. You would. You would. I mean, Balduck clearly opens the door procedurally to a lender coming into court affirmatively and making certain types of claims. With respect to claims that arise out of post-acquisition conduct, they can make claims that provide relief above and beyond simply rescission or reformation. Has any other circuit adopted Balduck to your knowledge? I do not believe so. No. No. But, again, even if you accept Balduck and say, yes, in the nonjudicial context, it's permissible for a borrower to come into court and seek some relief, they have to be seeking relief based upon post-acquisition conduct. Well, in Balduck, the only post-acquisition conduct that seemed at issue was the nonjudicial foreclosure, wasn't it? What had the acquiring institution done wrong in Balduck? Don't look through it. I couldn't find anything. I assume they inherited the sins of the son. That's what was being held against them. So that's why I'm right. It doesn't address the 12B6 issue. And perhaps all Balduck says is you can get into court and then get dismissed under merits. That's right. And I think the Benson case decided by this court in 2012 says, even if you get over the jurisdictional hurdle, then the question is, was there in the complaint enough to justify determination that the action could go forward? Here, Judge Seabright found that there wasn't. Judge Seabright gave them the opportunity to amend, and they didn't take that opportunity. And not only didn't they take the opportunity to amend, but they never once offered a word in defense of the complaint as they pleaded it. And in Benson, this court found there was jurisdiction, then looked at the complaint, said the complaint isn't good enough, the case is tossed. And here you're in exactly the same situation. You've got a complaint that was found to be wanting. You've got a party that hasn't bothered to defend that complaint. And even if you accept Balduck, find jurisdiction, you're still left with the unappealed from ruling that the complaint is inadequate to make the claim, to sustain any claim against J.P. Morgan Chase. And I would ask you to recognize the failure to properly preserve and present that issue with respect to the adequacy of the complaint and just say that the case is dismissed. Okay. Thank you. Thank you. Mr. Dubin, you've saved some time. Thank you, Your Honor. I think this discussion has been very helpful. I want to point out two things. First of all, if you look at the complaint, paragraph 16, our central argument was that there was no proof that Chase ever got the mortgage. And that runs throughout all of our claims, that they were pursuing a nontraditional foreclosure. Even though they didn't own the mortgage, because there was no evidence of the assignment. The reason we didn't amend the complaint was because Judge Seabright, in his opinion, made it clear that the purchase, that the PSA agreement, purchase and sale agreement, gave WAMU, from WAMU through the FDIC, gave Chase the title to the mortgage. There was nothing left for us to argue on that point. The second point I want to make is that the FREA law is not susceptible of handling other than money damages. Here we have equitable defenses. Now, if the court wishes to separate the damages from equitable defenses, like common law rescission, then it could have said it doesn't have jurisdiction over the damages. But that wouldn't mean it didn't have jurisdiction over the equitable remedies. I'd like to call attention, the court, to the case in this district, in this circuit, in Arizona. Rhinestone v. Enterprise Bank and Trust, 2012 Westlaw 1681986. This is the best analysis I've found. After they start out by saying the Ninth Circuit says that the claims have to be susceptible of resolution through the FDIC, citing your Henderson case, they point out that these kinds of equitable defenses, exactly the type my client has presented, are not susceptible of resolution by the FDIC. And they specifically say the FDIC can subpoena witnesses and documents, but they have no ability, quote, to set itself up as a compulsory neutral fact finder and arbiter of disputes between others. The FREA process cannot handle my client's claims. Okay, thank you very much. Thank you. Thank both sides for their arguments. Rundgren v. G.P. Morgan Chase is now submitted for decision.
judges: FLETCHER, IKUTA, HURWITZ